The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Let's be seated. Welcome to the Fourth Circuit. We have a couple of cases for argument today, and we will start out with the case of 68th Street Worksite v. Alban Tractor Company. We will hear from you, Mr. Justice. Look this way, because there's really no policy as to where the appellate sits in this court or the appellee. Sometimes here, sometimes there, so good morning. Good morning. Being left-handed, I chose the left side. May it please the Court, my name is Gary Justice from the Justice Law Firm in Crested Butte, Colorado. I represent Appellant, the 68th Street Site Work Group, or the group for short. The group is a collection of companies who are cooperating with US EPA in the state of Maryland to address contamination at the 68th Street dump super fund alternative site. The issue is whether or not companies that dumped waste in the 50s, 60s, and 70s before CERCLA was enacted had to know or had to have reason to know that their waste contained hazardous substances, a term that wasn't even defined until CERCLA was promulgated. So it's to know or had reason to know, that's the issue before this court, or whether it is simply an intent to dispose. That is actually absolutely correct, Your Honor. Your position is? Our position is that these companies in the 50s, 60s, and 70s hired a waste hauler to haul away all their waste. So they intended to dispose of their waste, and that waste ended up at the 68th Street site. So Mr. Justice, you think once we solve the question on whether or not it's new or should have known, home free, you win. Your pleadings are otherwise sufficient once we've accomplished that hurdle. That is correct. Tell me why. Because under CERCLA, it's a strict liability statute. And there is nothing in section 107A3, 9607A3, that indicates that a company had to know that its waste contained hazardous substances. But I've said to you, let's assume for a second, I agree with you. There is no know or should have known standard. What I'm asking you now is, if we park that for a second, I'm asking about the pleadings themselves. Are your pleadings sufficient factually to allege what's necessary under CERCLA? Absolutely. My question is, tell me why. Our amended pleading, our original pleading stated that each of the parties arranged with the transporter to have their waste hauled away. And that waste ended up at the 68th Street site, and that waste contained various types of hazardous substances. Our amended complaint states, clarifies and says, these parties intended to hire a waste hauler and intended to have their waste taken away. The district court's position on your pleadings is that they were conclusory allegations, and therefore the court doesn't have to accept them as true. Tell me why your allegations in your amended complaint aren't conclusory. I don't believe they were conclusory in the original complaint. Do you agree, though, that you, in most instances, copied and pasted the same phraseology throughout the complaint? I do agree that we used phraseology that's consistent with alleging that a party is an arranger under CERCLA. I do not agree that we, as the court stated, that we allege that each of these remaining six parties, the six non-selling parties out of the 350 or so that have settled, I do not agree that we stated that each of them had the same types of hazardous substances. What we did was we used an expert, an expert that is commonly used and was cited by the Second Circuit to be the leading expert on hazardous substances in historical waste streams, to match up those hazardous substances with the types of waste streams that each of these six companies would have generated during that time frame. I do not believe it's conclusory at all. We identified every specific waste stream. We identified hazardous substances that would be associated with such waste streams. And we detailed out in those instances where parties are alleged to be successors of the companies that actually created the waste streams. So what do you want us to do, vacate or reverse? We would like the case reversed and remanded to the district court to indicate that the proper standard for arranger liability does not require that a party knew or should have known that its waste contained hazardous substances. If we're specifically talking about disposing of waste as opposed to selling a useful product or something in the gray area that's discussed in Burlington Northern. This is not a gray area. This is the disposal of waste. So in essence you're asking us to follow the Lincoln decision. You believe that that's correctly decided and that's the case that should control this question and we should follow it? I think Lincoln is a great recent example that should be followed, but I don't believe it's the only case out there. I believe there's 40 years of case law that support our position. But the Lincoln case was a summary judgment case, was it not? I believe so, yes. And so in that case they weren't necessarily articulating whether or not the plaintiff, the city, or the county, the defendant, or even in their counterclaims alleged sufficient facts to support a circular claim then. That was not the issue in that case from a 12B6 standpoint. I agree with that. We never got past the initial pleading stage. We got shut down immediately when the court held that any type of range of liability, whether it be the sale of a useful product, whether it be something in the gray area, or whether it be something in this instance, the actual disposal of waste streams. Waste streams in the 50s and 60s, long before hazardous waste facilities, long before recycling, long before anything else where everything went into the trash can, that that falls under the end of the spectrum in Burlington Northern that it is the intent to dispose of your waste stream. And those waste streams contain hazardous substances, and therefore pleading is sufficient. Well, if we do accept that, well, the district court's determination that these were conclusory was incorrect in 9607A3, then what is the remedy? Do we decide this issue in your favor, or do we remand for the district court to reevaluate the pleadings in light of the correct standard? Or should we decide the sufficiency of the pleadings in your case ourselves? I believe the middle statement is the correct one. Remand it to the district court to determine whether our amended complaint is sufficient using the proper standard for a range of liability when it comes to disposal of waste streams decades ago. Let me see if I can catch up here. I'm also here speaking on behalf of the 318 parties that have voluntarily settled with the group, and 25 additional parties that settled with EPA for one-time cash out settlement payments as part of the consent decree that was entered in 2017. What does that mean for our issue we're deciding today? Because there's not just, this isn't just my clients. We followed the law. I mean, the question we're facing, the issue you presented to us, is whether there's this additional requirement of new or should have known. Well, let me speak. No matter how many parties you represented, who's involved in it, what the policy implications are, does it? It does to this extent. I will tell you we're probably not going to consider policy considerations to determine this case. Okay. Does that help you? It does help me. Thank you. But the practical consideration if this ruling is upheld, think about it. If we're talking about waste disposal in the 60s, a young employee in the 60s would be in their 80s or 90s now. Documents are long gone. Even if those people were still alive, if we asked them questions about what was in your waste. So that goes to the very purpose of CERCA, that is, you know, when you have to go back for decades and decades to, if Congress had wanted to put a knowledge requirement, it would have been more specific. Exactly. I mean, if we're talking about strict statutory construction, if Congress wanted there to be some actual or constructive knowledge of hazardous They did stick a knowledge requirement in certain parts of it, didn't they? They did. And that actually favors our arguments because they did put knowledge requirements in other parts of CERCA. They could have easily put it in there for a range of liability. But you agree then that there is a knowledge requirement and that knowledge requirement is associated with the intent to dispose. I do agree with that. All right, so help me with reconciling your thoughts on the district court's opinion then. In the end, the district court ultimately said your pleadings were deficient because you didn't arrange, you did not allege intentional, that you intentionally or the defendants intentionally arranged to dispose of hazardous substances. While we spent a lot of time talking about whether or not the defendants knew or should have known, should have been in your pleadings, I go back to what I've already said before. The district court in its analysis looked at other cases that looked at this knowing, knew or should have known. But ultimately, was that decision based on the knew or should have known standard? It was, but the district court applied that knowledge to intent to dispose of hazardous substances versus intent to dispose of waste. And I recognize that people have difficulty with that, but it is then, once you determine that somebody, a company intends to dispose of their waste streams, then you're at the end of the spectrum of Burlington Northern that makes it clear, well, there's no, when you're at that point, the next step is, did that waste contain hazardous substances? Are you asking us to then eliminate hazardous substance from the analysis until we arrive that there is some intent to dispose of, say, municipal solid waste? And then your position is, if there's an intent to dispose of MSW at some landfill, then we now have met the requirements of CERCLA because then we can just simply go to determine if there is some hazardous substance in the waste stream? Correct. And tell me where in the statute it says that. The statute talks about an arranger liability component, and that arranger liability deals with the intent to dispose of hazardous substances. I understand your argument that it's not about whether or not the potentially liable responsible party knew it was hazardous. The fact that it was hazardous simply comports with the concept of strict liability, but help me with, at the pleading stage, what you must allege to get past 12B-6. We must allege that a party intended to arrange with the transporter to have its waste hauled away. But only waste. Only waste. And then later in the allegations, we allege that that waste contains certain types of hazardous substances, as that term was defined after 1980. So it's your position that the intent factor goes to the intent to dispose? The arranging to the intent to dispose? Correct. Okay. Which is different than, you're saying is different than Burlington, the Burlington case at Supreme Court, where there was actually an intent to, I guess, sell? Yeah, Burlington Northern set forth a spectrum. At one end of the spectrum, and Burlington Northern makes complete sense, someone's trying to sell something that's useful. And they don't intend to dispose of it, and they don't intend that it's going to be disposed somewhere and hazardous substances are going to be released. That's one end of the spectrum. But Burlington Northern specifically states the other end of the spectrum, and the case we have here is where a company or a party intends to dispose of its waste. That's the other margin. And then there's gray areas in between. And the cases that are cited and the cases relied on by the district court, those more refer to the gray area in between. But what we're talking about here is the end of the spectrum, that if you intend to dispose of your waste, then you don't get to that analysis. Yeah, but one of the examples that you have in your complaint involves, for example, a manufacturer and distributor of electronic equipment. Correct. And your position is, because you're in the business of manufacturing and selling electronic equipment, you must produce waste. And your argument today is, and later on we can then just simply assume that that waste included electronic waste or e-waste, which, if it's disposed of, would be a hazardous substance. Help me reconcile where every company that manufactures or distributes electronic equipment must have e-waste in their waste stream. In other words, if in fact they have copper and other types of nonferrous metals within their system, your position is they must have intended to dispose of that material because they're in the business of manufacturing components that include it. That is my position. And you have allegations to support that in your complaint that are not conclusory. We do. All right, I may ask you about that again when you get back up because there's a particular paragraph that I'd love to talk about. Okay, great. It looks like I have eight seconds, so I believe my time is up. Thank you. All right, you have some time in rebuttal. We'll hear from Mr. Fitzgerald. I'd like to reserve three minutes for my co-counsel, Ms. Wolgaren, on some successful liability issues. It will all take 17 minutes. Your Honors, it's a pleasure to be here this morning. Steven Fitzgerald from the law firm of Morgan, Lewis, and Bacchius on behalf of Appellees. Judge Dawson, in response to one of your questions, I will say that Congress, the Supreme Court, nor this Court, have had any difficulty in reading Section 107A3 of CERCLA, which requires the disposal of hazardous substances. The argument that appellants put forth here is frankly dangerous. Their conclusion is that any company who disposes of waste or any substance is liable under CERCLA. Isn't that what strict liability statutes do? It is absolutely what strict liability statutes do once you have liability, and that's what 107A3 does. 107A is the liability provision of CERCLA. So 107A1 and 107A2 deals with owners and operators, and 107A3 deals with arrangers and transporters. And here we're dealing with 107A3. Well, that's really the heart of the question we have here. And Judge Benson's question goes to the question, what is strict liability here? It's an act of incurring the liability in arranging it, sufficient in and of itself. Isn't this like a trespass? When you think about a trespass, all you need to do is be on the lot there. The knowledge that that place is unlawful is not necessary. And when Congress enacted, this is where we're going to get to the heart of it, might as well get to it. No need to beat around the bush on it, because this is really where it comes down to. What is CERCLA, and what does it mean? And to the extent that there is a strict liability, the purpose of it, when we're going back decades and decades and determining, well, what is this and how do you prove knowledge on it? And is that requirement within this statute? That's really what it comes down to. So when we look at the contracting with a waste hauler to take waste to a dump, doesn't that satisfy the intent to dispose of waste? And the question then becomes, well, do you have to have knowledge of the hazardousness of it? And is that required within the statute? So what it satisfies is that it is, in fact, a disposal of waste, but that's not what CERCLA says. CERCLA says it's an intent to dispose of hazardous substances. So waste under RCRA, which is a different statute, which the appellant is trying to bring up and confuse the court, is much different than CERCLA here. They're completely different statutes and they have completely different goals. I think, as we point out, even in consolidation coal, looking at the dissent, a party who arranges the disposal of hazardous materials may be liable for response costs under CERCLA. And it's hazardous materials and it's hazardous substances is what the Fourth Circuit has held in consolidation coal and agreed with the Supreme Court and agreed by all district courts that have handled this particular issue, but for one recently out of the Eastern District of California. And Judge Wynn is right. Judge Benjamin has framed it. Help us understand why there has to be some knowing requirement when the fact of the matter is it's strict liability. If it is a hazardous substance, we're there. So why must a person know or should have known it was hazardous when, in fact, even in the dissent you just referred to, it recognizes the harsh reality of the retroactive effect of the statute. So at the time you dispose of something, it may not have been known that it was hazardous, but yet it would be triggered under CERCLA. Help us understand why your position is there has to be this knowing requirement. Absolutely. So to Judge Benjamin's question and yours as well, the clarification that is necessary is that the disposal is not just of any particular substance. It is of a substance that is a hazardous substance. So if parties are liable under CERCLA, which is a draconian statute, if they're liable under CERCLA just for the disposal of any particular substance, then that is much broader than any intent that has been described by the Supreme Court in Burlington Northern or by this court in Consolidation Coal or NUMO-ABEX. But I think there's a finer distinction here, though. We're not talking, well, in this question, I understand the argument that the other side has made, but in this question, the substance is hazardous. We're talking about whether or not there's some requirement that you had to know it was. That's the question. Their position is you're asking the court to impose a requirement that a potentially responsible party knew or should have known that the substance was hazardous. I'm asking you why. Why is it enough that it just was hazardous, a hazardous substance? Because, Your Honor, and obviously this is a difficult question, and the answer to it is that, well, let me rephrase this, okay? So parties are disposing of substances all the time. And I would look back to the Las Cruces case here, where they were disposing of dry cleaning materials in the 50s and 60s. And the defense argument there was that the defendants did not know or had no reason to know that the substances were particularly hazardous. But those substances were making the individuals high. They were burning their skin. They couldn't breathe. So it's not as though they absolutely have to know. They know or should have known that the particular substances that they were disposing of are hazardous. So if we look at kind of the culpability standards in Burlington Northern versus this particular case, Burlington Northern did not hold the potentially responsible party there liable, even when it knew that the useful product there could have been spilled or even disposed of. But here we're asking... But isn't it because there they were selling and they're not arranging this arranger liability? You're exactly right. That is exactly right. So the point here is that they were selling a useful product. The useful product in Burlington Northern could have been spilled. It just could have. It was spilled. Matter of fact, they had processes in place to try to prevent it from being spilled and how to clean it up. So there wasn't a question of whether or not there was some spill. The spill occurred. So let's not assume that that didn't occur. It did. But what did the Supreme Court do with that, though? The Supreme Court said that that was not enough for circle liability. Because they did not arrange for its disposal. They arranged for its sale. That's correct. So I think everybody in the courtroom understands what Burlington Northern represents. What I guess I'm trying to get at is tell me why then outside of the context of an arrangement to sell versus an arrangement to dispose of a hazardous substance, the fact that there has to be an allegation that the individual knew or should have known that the substance was, in fact, a hazardous substance. The fact that it was, why isn't that sufficient? Because the Supreme Court in Burlington Northern did not address that question. So what is the answer here? Well, I'll first say, Your Honor, that the appellant's allegation here doesn't even get to that this was a hazardous substance. Getting to the know or should know, if parties do not know or should know that their particular waste stream was hazardous, then you're including liability for persons well outside the scope of the circle of statute. How so? There's a difference between A1 and A3. The key difference is the arranged for disposal, not to mention of a hazardous substance. So how then is that phrase, arranged for disposal, do all the work that bridges between A1 and A3? Well, A1 deals with owner-operator liability different from A3, which is the arrangement for disposal either by a private party or the transport, an arrangement for disposal by a transporter. So they're different liability schemes. I'm not sure if that answers your question, Your Honor. But the difference is arranged for disposal, not a mention of hazardous material. Looking at the statute, it's the arrangement for the disposal of hazardous substances. So the appellants make this argument regarding Congress's intent, had they intended for there to be a knowledge element, they would have put it in the statute as they did with the, I think it's the innocent landowner defense. I'm curious to hear your response to that argument. Because you would agree that there are some exceptions that require knowledge. Yes, Your Honor. But this is not one of them. So the way the exemptions work under CERCLA is you first have liability. You have liability under Section 107A1, A2, A3. Then you would go to the defenses of the exemptions that were put into place in 2002. Under the reauthorization of the Brownfields Act. So first you have liability. So if we look at, for example, the Municipal Solid Waste Exemption or 107-0. There's first liability for MSW. But then what the exemption actually does, it exempts the liability because it in fact has hazardous substances in that particular exemption. That's how I bring those two to bear. That's how I look at both of those together. So what the appellant's trying to do in this particular case is frankly dangerous. As you point out, Judge Dawson, with your hypothetical on e-waste. They're saying that any party who disposes of a particular type of waste or operates in a particular industry is de facto liable under CERCLA. And that doesn't support what Burlington Northern says because in that instance Shell was manufacturing and selling a hazardous waste. That waste happened to spill. But the Supreme Court said there's no liability here because you were not intending to dispose of it. You were intending to sell it. The fact that some of it spilled doesn't trigger CERCLA liability, correct? That's correct. Just because I have a bottle of pesticides in my garage at home doesn't make me liable. And that's the argument here. And same with Shell. Just because they owned or possessed or manufactured a hazardous substance does not make them liable. There's a scienter element, there's an intent element that Burlington Northern brought to bear under CERCLA 1073. But we're circling back to the problem again. So we agree that there is a scienter element with regard to intent to dispose. The issue that we're trying to decide here today is whether or not that therefore then moves forward now to some intent to dispose of something with a knowledge that it in fact is hazardous or a hazardous substance. I'm trying to understand what case do you point to, what authority do you have that says that should or is the requirement. As you've already mentioned in the dissent by Judge Wynn, that there is this harsh reality to CERCLA. And that is something could have on a particular date not been determined to be hazardous, but later on it has been. There could not have been knowledge at that point in time. And yet there still would be liability. How do you reconcile that? The statute clearly contemplates it. So how do you superimpose this requirement today? I do the same thing that Judge Bianco did in the town of Islip or was done in the Las Cruces case, District of New Mexico. But aren't those fairness arguments? Those are not fairness policy type arguments, Your Honor. Tell me why not. So Judge Bianco took a look at what was midnight dumping in a particular park in New York. And in that case, what Judge Bianco looked at was whether or not there was any knowledge or there should be knowledge of the materials that were being disposed in this park and whether or not they were in fact hazardous. Multiple courts have all looked at this issue at the district court level. I will obviously say that. This has not been handled at the circuit court level. So these are district court cases? These are all district court cases, Your Honor. What do you think that means to us? It's not precedent? It's not even guidance? It may be helpful. I don't know about that. You can argue it and say they agree with you. You've got some judges that agree with you. That's all you're going to get out of that. I mean, if you look at the two cases there, it's basically the same thing that's done here. So that's the kind of case we're reviewing here. What we need is circuit court cases. We tend to look at other circuits for guidance on this. Is there any other case from another circuit that has held what Judge Dawson alluded to, that is that A1 and A2 require any knowledge of hazardousness? Well, the Supreme Court. Is there any case like that that says that? They have not. So this would be the first circuit to handle the issue. I would say that district court judges do provide incredibly helpful guidance in these particular types of cases, as Judge Gallagher has done here in her thorough analysis. The appellate mentions that this case is in its infancy, but I'll also mention that this notice of appeal was the 917th docket entry in this particular case. So it's not as though this is a particular fresh issue to Judge Gallagher or any of the parties in this particular matter. Is it your position that the district court here has in essence ruled, and again I mention this, that I acknowledge the analysis the court used, clearly contemplated cases that considered this new or should have known? What I am asking is, was the district court's ruling then therefore predicated on the absence of new or should have known makes the pleadings defective, or was that the sole issue, or were there other issues that the court relied on to reach that conclusion? There were other issues that my co-counsel will mention here. But the primary issue is whether or not the plaintiff properly pled under the complaint a range of liability, which was given the opportunity to do in the complaint, was given the opportunity to do just after the motion to dismiss, was given the opportunity to do on the second amended motion to amend. And then another opportunity, but they decided to appeal. So the position that the plaintiffs and appellants here are positing is, again, very, very dangerous for Circle of Liability's team, in that it opens it up even broader than what you mentioned could be a very bad day for a lot of people. And the exemptions do not provide the defenses necessary to the liability scheme that the appellants are pushing forward here. So I will close with asking this court to affirm the district court and follow both consolidation goal, both the majority and the dissent, which talks about the disposal of hazardous substances, as well as the Supreme Court in Burlington Northern, which held that you need an intent to dispose of hazardous substances, which is what Congress wrote in 1980 when they wrote the statute. Before you sit, I want your opinion on one question. Let's say hypothetically we don't agree with you or rule against you, but we do not address the success of liability. What do you say the remedy is? Is it to vacate and remand? No, this would be to affirm. I understand that, but I'm saying if we rule against you and do not reach the issue of the success of liability, therefore, what then do you say the remedy would be? On the success of liability issue? No, no, we do not reach it. We do not reach it. That's a hypothetical. Hypothetical rule against you on the first issue here. We don't reach the success of liability issue. What's the remedy? The remedy would be if you rule against me, then you're remaining for further proceedings in the district court. Is it vacate and remand? No, I would allow the district court to give the plaintiffs another opportunity to file their fourth amendment complaint and then rule on those particular pleadings. Although, that is a massive amount of judicial waste and waste of the parties that have been dealing with this for four years, Your Honor. We'll take it. We'll hear from, is this, Walgara? Did I get that right? This is Walgara, Your Honor. Flows much better when you say it, Walgara. Good morning, Your Honors. May it please the court. My name is Collette Walgara on behalf of the appellee, Solo Cup Operating Corporation, and we fully join in the argument of my colleague, Mr. Fitzgerald. We're running very limited time. I will address an alternate basis. That this court may affirm the district court ruling as it relates to appellee Solo Cup on the basis that the plaintiff failed to adequately allege successor liability against Solo Cup. Although the district court did not reach this issue because it rendered it moot based on its decision, this court can affirm on any basis in the record. The appellant's complaint and proposed amended complaint failed to state a claim for successor liability against Solo Cup because it relied on conclusory statements of law that are insufficient to suggest a cognizable cause of action against Solo Cup. Give me some of those examples of conclusory statements or allegations. Yes, Your Honor. So in the plaintiff's original complaint, the sole allegation against Solo Cup for successor liability is that Solo Cup is one and the same as and or the successor of the alleged arranger entities. And that's it. That's the only allegation. In the proposed amended complaint, which was filed after the district court had issued a detailed ruling with many pages regarding what is required to assert successor liability, the proposed amended complaint still contained the same conclusory assertion, which is that Solo Cup is one and the same as the successor by merger or de facto merger to or the mere continuation of these alleged arranger entities. So even with the proposed amended complaint, the appellant failed to cure the deficiency. The plaintiff does not and cannot allege that any of the alleged arranger entities merged into Solo Cup or that Solo Cup assumed their liabilities.  it follows the standard common law rule that a corporation does not acquire the liabilities of a company except in four limited circumstances. So you agree the district court could, if we decide differently on the first issue, could decide this issue here in the first instance. And that's kind of the way we normally do things around here. We respect our district courts to go back and determine on it. And there's a question of whether the plaintiffs can amend. If we decide it here, that sort of takes that away, doesn't it? Your Honor, we would argue that amendment would be futile. They have tried to assert three of the four exceptions to the general rule that a company does not assume the liabilities and they have failed, even with the instruction in clear, detailed cases regarding successor liability that the district court cautioned that they should not seek to amend if they cannot meet those pleading standards. So we would say that amendment would be futile at this point and the district court's ruling dismissing the complaint and denying the motion to amend should be affirmed. All right. Additional questions? Thank you very much for your argument. Mr. Justice, you have a few minutes in rebuttal. Sure. Let me speak briefly about Solo Cup. Council did accurately state our allegation in the original complaint. Solo Cup did not file a motion to dismiss. Solo Cup filed an answer. In that answer, Solo Cup admits that Maryland Cup Corporation and Sweetheart Cup Company are predecessors to Solo Cup Company. Even though they did admit that in their answer, when we filed the amended complaint, we included at least two, possibly three pages of more detailed allegations about the successor liability of Solo Cup for its predecessors. Take it as it is, but they admitted that. They also bring up in their brief that we didn't adequately, that the court could rule that we didn't adequately allege that the site's facility or where at the site their waste was disposed of. Solo Cup also admitted in their answer that they filed to the original complaint that the site is a facility. So I think that takes care of the arguments with respect to Solo Cup. I am glad that, Judge, when your dissent was brought up in the consolidated coal versus Georgia Power case, because again, this is not a case of trying to sell used transformers. This is a simple case and everybody at this site, all parties at this site, all 300 plus parties at this site that are cooperating basically had the same types of waste streams. This is what happens at what's called a co-disposal municipal landfill, where it's a combination of municipal, commercial, industrial waste. It's that conglomeration of the same types of waste streams that creates the release of hazardous substances that's contained in those waste streams that causes the site to become a Superfund site and like this site, where 50 to 60 million dollars has to be spent to study and clean up this site. Let's stop for a second because you've described what every community in the United States has in its waste stream. There's residential waste, there's commercial waste, there's sometimes even industrial waste. And so for a community that has businesses in that commercial waste stream, that commercial waste stream has a lot of paper in it. You're not suggesting that paper in and of itself is a hazardous substance, are you? I am not. Okay, so we have waste streams and you're saying it's this commingling of all the streams that creates the hazard. Help me with reconciling where CERCLA seeks to impose liability because of the commingling of waste at a landfill. That's not what you're suggesting, is it? That is not what I'm suggesting. So then you then have to allege facts that support an allegation for arranger liability and again, I know your position is all you have to do is say that it is waste. But I guess I'm still trying to reconcile my mind is how waste in and of itself is hazardous waste. Don't you have to allege facts that would show a particular business arranged for the disposal of hazardous waste at the facility? We have to allege that a business arranged for the disposal of its waste and then we have to further allege that that waste contained hazardous substances. The reason we state it that way is because of Burlington Northern. We're not going to allege that these companies arranged to dispose of something that's useful or could be sold and then that product contained hazardous substance. We're making it clear. It's the disposal of waste. I understand. So hypothetically, let's go back to our e-waste example. You have a company who manufactures electronic devices. Your position is because they do that and they dispose of whatever the residue is from that manufacturing. That is what you're seeking to impose certain liability on because it's the disposal of that My facts that no one's disputing that they arranged for the disposal of it. They didn't try to recycle it. They weren't trying to send it somewhere else to get some value for it. Is it your position that you have to allege that in order to at least at the pleading stage trigger certain liability? Yes, and that frames up the analysis of what would be contained in their waste, what types of hazardous substances. But a business would also create other types of waste. Paint waste, cleaning waste, other types of waste that would contain hazardous substances. The same types of hazardous substances that are being released to the site. Again, the commingling of all that waste it's just this heterogeneous ball of all this waste that's releasing hazardous substances emanating from the landfill as a result of all those different types of waste streams going into that landfill, which is really a dump back there. So I'm guessing your position is that's what Congress, so this is a strict liability statute. It is a strict liability statute. And in fact, when you're talking about allocation in certain cases among parties, typically the arrangers and generators are foisted with a higher allocation because they are the ones who create the waste. So the practical effect here is if the district court's ruling on arranger liability is upheld then this is going to go back on the American taxpayer in the Fourth Circuit because it's going to be virtually impossible to go back in time 50 or 60 years and find some sort of knowledge or constructive knowledge about what would be contained in a waste stream. Superfund is a tax. If nobody's around to pay for it, then the American taxpayer has to pay those. Thank you for your time. Thank you, Counsel. In the tradition of Fourth Circuit, we'll come down and greet Counselor and proceed to the next case.
judges: James Andrew Wynn, DeAndrea Gist Benjamin, Joseph Dawson III